# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY L. MITROW,** | : | **No. 3:05cv64** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | **(Magistrate Judge Mannion)** |
| | : | |
| **VERIZON COMMUNICATIONS, Inc.,** | : | |
| **VERIZON PENNSYLVANIA, Inc.,** | : | |
| **VERIZON BENEFITS CENTER, d/b/a** | : | |
| **VERIZON, and** | : | |
| **JAMES SANDERS,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are plaintiff's (Doc. 110) and defendants' (Doc. 109)

objections to the report and recommendation of Magistrate Judge Malachy E.

Mannion (Doc. 108) in the instant employment discrimination case.  Having been

fully briefed, the matter is ripe for disposition.

## I. Background

Plaintiff began working for Verizon in 1996.  (Defendants' Statement of

Undisputed Facts (Doc. 59) (hereinafter "Defendants' Statement") at ¶ 1, Plaintiff's

Statement of Undisputed Facts (Doc. 69) (hereinafter "Plaintiff's Statement") at ¶ 4).

She voluntarily resigned in August 2000.  (Defendants' Statement at ¶ 2, Plaintiff's

Statement at ¶ 5).  She returned to the company in 2001, receiving no credit for her

previous service, despite what she contends was a promise from Verizon.  (Plaintiff's

Statement at ¶ 5, Defendants' Statement at ¶ 5).  During her service for Verizon, defendant Sanders was an administrator responsible for attendance.  (Plaintiff's Statement at ¶¶ 2, 31-32, Defendants' Statement at ¶ 29).

During plaintiff's employment, Verizon used a Regional Attendance Plan (RAP) to administer employee absences.  (Plaintiff's Statement at ¶ 16, Defendants' Statement at ¶ 6).  This program monitors attendance and establishes a record of unexcused absences or tardiness, which can lead to disciplinary action.  (Plaintiff's Statement at ¶ 17, Defendants' Statement at ¶¶ 7-8).  The program credits as an "incident" a period of absence, whether that period consist of one day or several. (Defendants' Statement at ¶ 9).  If a leave is certified under the Family and Medical Leave Act it does not qualify as an incident under the program.  (Plaintiff's Statement at ¶ 17, Defendants' Statement at ¶ 8).  In the relevant time period, Verizon employed a five-step RAP program for employees who had five or more years of experience and a four-step program with those employed between six months and five years.  (Plaintiff's Statement at ¶ 16, Defendants' Statement at ¶¶ 14-15).  The parties disagree about whether use of the RAP is discretionary; plaintiff contends that it is, but defendants insist that the only discretion available for supervisors is flexibility about whether to place an employee under the provisions of the RAP, not in how to administer the program.  (Plaintiff's Statement at ¶ 23, Defendant's Statement at ¶ 28).  If an employee violated the RAP rules, that employee would be raised one step in the program.  (Defendants' Statement ¶ 17).  If the employee

2

committed no attendance violation for six months, that person would be reduced one step on the RAP program.  (Defendants' Statement at ¶ 18).  Employees who reached the next-to-last step on the RAP program were suspended; they were fired when they reached the final step.  (Defendants' Statement at ¶¶ 20-25).  Any employee who violated the RAP program received a letter, as required by the Verizon program's rule.  (Plaintiff's Statement at ¶¶ 47-48).  Plaintiff points to one employee, Jennifer Irizarry, who was reinstated in her job after the company fired her without providing the notice required in the program.  (Plaintiff's Statement at ¶ 28).

Verizon's employee benefits also included a Sickness and Accident Disability Benefits Plan.  (Plaintiff's Statement at ¶ 18, Defendants' Response to Plaintiff's Statement of Material Facts (Doc. 96) (Defendants' Response) at ¶ 18).  This plan provided employees who were absent from work due to an illness or injury with benefits.  (Id.).  The program offered long-term disability benefits to employees who had been disabled for fifty-two weeks.  (Doc. 69,  Ex. 4 at 83-85).  Benefits became available to employees under this program on their eighth consecutive day of absence.  (Id. at ¶ 19).  The company allowed leave under the FMLA and this Disability Benefits Plan to run concurrently.  (Id. at ¶ 20).  In such cases, the RAP did not apply to the absences.  (Id. at ¶ 21).  Leave taken under the disability that was not covered by the FMLA could be charged under the RAP.  (Id.).

Plaintiff was free from violations under the RAP when she returned to Verizon in 2001.  (Defendants' Statement at ¶ 30).  Two absences in April 2001 were not

3

covered by the FMLA, and plaintiff was placed on step one of the RAP on April 30,

2001.  (Id. at ¶¶ 31, 33).  Another absence, from September 10 to September 12,

2001, caused the company to advance her to step two of the RAP.  (Id. at ¶ 35-36).

An absence from work on October 31, 2001 caused the company to extend the date

on which plaintiff would be reduced to step one of the RAP to May 1, 2002.  (Id. at ¶¶

37, 39).  Plaintiff became eligible for FMLA leave in March 2002, and she received

one day of FMLA leave on March 22, 2002.  (Plaintiff's Statement at ¶¶ 9, 99).  The

company reduced her one step on the RAP on May 1, 2002.  (Defendants'

Statement at ¶ 42).

        The plaintiff had various medical ailments, and she first began to seek

treatment for them in May 2002.  (Plaintiff's Statement at ¶ 25).  Plaintiff took leave

from work beginning on May 2, and was unable to return until August 4, 2002.

(Plaintiff's Statement at ¶ 24, Defendants' Statement at ¶ 43).   She asked that this

leave be considered FMLA leave.  (Plaintiff's Statement at ¶ 24 Plaintiff cited stress

and headaches as the cause for her leave from May 2 through June 30, 2002.

(Plaintiff's Statement at ¶ 25, Defendants' Statement at ¶ 44).  A doctor later

diagnosed her with syringohydromyelia and cervical radiculopathy.  (Plaintiff's

Statement at ¶ 25).  Her leave at this point was for child care and personal medical

issues.  (Plaintiff's Statement at ¶ 36).  Plaintiff took leave from July 1 to August 4,

2002 because she had surgery.  (Defendants' Statement at ¶ 45).  The defendants

approved of leave under the FMLA and company disability plan during this latter

period.  (Id.).

The defendants denied plaintiff's request for FMLA leave during the first two months of her absence, contending that she had failed to submit a request for FMLA certification by the required to the company's benefits administrator.  (Plaintiff's Statement at ¶¶ 38, 41, 100, Defendants' Statement at ¶ 47).  The plaintiff contested this ruling, arguing that her doctor had failed to submit the proper certification, not her.  (Plaintiff's Statement at ¶ 39).  The defendants dispute this, contending that plaintiff never informed the administrator that her doctor had failed to submit the required form.  (Defendants' Response at ¶¶ 39, 41).  They also argue that plaintiff did not submit additional information as required by the plan and that the form she submitted was incomplete.  (Id. at ¶ 40).  Plaintiff contends that the company had promised her benefits if she returned the documents by June 25, 2002, and that she did so.  (Plaintiff's Statement at ¶ 40).  Defendants also denied plaintiff's company disability plan request for this period.  (Defendants' Statement at ¶ 47).

Plaintiff returned to work after her leave of absence on August 5, 2002.  (Plaintiff's Statement at ¶ 44, Defendants' Statement at ¶ 49).  She was issued a step letter by Defendant Sanders indicating the company had elevated her to step 2 of the RAP process.  (Plaintiff's Statement at ¶44, Defendants' Statement at ¶ 50).  The company assigned her this status because of her absence from May 2 to June 30, 2002.  (Id.).  Plaintiff contends that the step letter was inappropriate because her appeal of the FMLA was still "open."  (Id. at ¶ 46).  Defendants claim that plaintiff's

5

appeal had closed by August 7, 2002. (Defendants' Response at ¶ 46). After the plaintiff again missed work, this time to care for an ill daughter, she requested FMLA leave. (Plaintiff's Statement at ¶ 51, Defendants' Statement at ¶ 51). Her request was denied because she failed to submit the proper form; she contends her doctor later faxed the company's FMLA administrator to take responsibility for failure to file the form. (Plaintiff's Statement at ¶¶ 52-53). The company insists that this form was not sent to the administrator, but rather to a health care provider. (Defendant's Response at ¶ 53). Plaintiff had two other medical absences in September and October, 2002, and did not receive FMLA approval for either. (Defendants' Statement at ¶¶ 52-53, Plaintiff's Statement at ¶ 55).

Defendants issued a step letter to plaintiff on October 17, 2002, advancing plaintiff to step three of the RAP for her absences from September 17 through 19. (Plaintiff's Statement at ¶ 56, Defendants' Statement at ¶ 54). This action suspended her for three days without pay. (Id.). Plaintiff contends she never received a copy of this disciplinary letter and argues that this action was in error, since her request for leave was on appeal. (Plaintiff's Statement at ¶¶ 64, 98). Defendants deny that plaintiff failed to receive a copy of the letter. (Defendants' Response at ¶ 64). Plaintiff also alleges that Defendant Sanders agreed to remove the letter from her file on October 30, 2002. (Plaintiff's Statement at ¶ 98). Plaintiff then on October 17 filed an appeal of defendants' denial of her FMLA leave from May 2 through June 30 with the United States Department of Labor. (Plaintiff's

6

Statement at ¶ 62).  Plaintiff took another leave of absence from October 18, 2002

through January 19, 2003 because of chronic headaches related to spinal problems.

(Defendants' Statement at ¶ 56, Plaintiff's Statement at ¶ 72).  This same illness had

led to her earlier medical leave.  (Plaintiff's Statement at ¶ 73).  Defendants initially

approved of the leave as a FMLA absence on November 13, 2002, and eventually

sent plaintiff a series of letters that extended company disability leave beginning on

October 25, 2002.  (Plaintiff's Statement at ¶¶ 68, 70, Defendants' Statement at ¶¶

57-58).

On January 8, 2003, the Department of Labor, after discussions with both

parties, settled and closed plaintiff's complaint.  (Plaintiff's Statement at ¶¶ 75-76,

Defendants' Statement at ¶ 59).  The Labor department found that the Verizon

defendants had violated plaintiff's FMLA rights by denying her request for leave from

May 2, 2002 to June 30, 2002.  (Defendants' Statment ¶¶ 59-61, Ex. S).  The

Department also found that plaintiff should be issued a step letter for her absences

that occurred after July 24, 2002, when she exhausted her FMLA leave.  (Id. at Ex.

S).  The ruling also concluded that the step letter should be changed to reflect

absences after July 24, 2002.  (Id.).  Plaintiff would receive a step letter for absences

after she exhausted her leave, however.  (Id.).  Plaintiff claims that she was informed

by the Department of Labor that she may be advanced to step 3 of the RAP and

suspended, but no other disciplinary action would be taken.  (Plaintiff's Statement at

¶¶ 76-77).  Defendants deny this claim, and note that no evidence other than

plaintiff's claim supports this view.  (Defendants' Response at ¶ 76).  Though plaintiff

received the Department's decision and her case file, she denies that her FMLA

leave was exhausted before November 15, 2002, and contends she had no notice

that she had used up her leave by July 24, 2002.  (Plaintiff's Statement at ¶¶ 59-61).

Following the terms of the letter, Defendant Sanders adjusted the August 5 and

October 17 step letters.  (Plaintiff's Statement at ¶ 45, Defendants' Statement at ¶

61).  He did not provide plaintiff with copies of these letters, however, before Verizon

terminated her employment.  (Plaintiff's Statement at ¶ 49).

Verizon examined plaintiff's attendance and prepared an individual attendance

report on January 13, 2003, adjusting the record to reflect the Department of Labor's

ruling.  (See Exhibits to Defendants' Statement of Facts for Summary Judgment

(Doc. 63) (hereinafter "Defendants' Exhibits") Ex. T.).  According to this record,

plaintiff occupied step one of the RAP on May 1.  (Id.).  After she exhausted her

FMLA leave entitlement on July 23, 2002, she was placed on step two.  (Id.).  Since

she had originally been placed on step two on May 1, the company changed the

record to reflect that she achieved this status only after exhausting her FMLA leave

on July 24, 2002.  (Id.).  The company placed plaintiff on step three of the RAP on

October 17, 2002, based on her unexcused absence from September 17 to

September 19, 2002.  (Id.).

Plaintiff claims she phoned defendant Sanders on January 13, 2003 to inform

him she would be able to return to work on January 20, 2003.  (Plaintiff's Statement

at ¶ 78).  She also insists that he faxed her a new work schedule.  (Id. at ¶ 79).

Defendants deny both these assertions, claiming that Sanders recalls neither.

(Defendants' Response at ¶¶ 78-79).  On January 17, 2003, plaintiff faxed a letter to

Sanders from her doctor that indicated she could return to work with

accommodations for her medical conditions.  (Plaintiff's Statement at ¶

 81, Defendants' Statement at ¶ 64).  These accommodations included "an

orthopedic chair, hourly changes of position for 5-10 minutes, no overtime, and desk

work days when plaintiff has severe pain."   (Defendants' Statement at ¶ 64, see also

Plaintiff's Statement at ¶ 81).  The parties agree that Verizon expressed an ability

and willingness to accommodate the plaintiff's condition. (Defendants' Statement at

¶ 66, Plaintiff's Response to Defendants' Statement of Undisputed Facts (Doc. 98)

(hereinafter "Plaintiff's Response") at ¶ 66).

On January 20, 2003, the day plaintiff returned to work, she was told to report

to Defendant Sanders's office.  (Plaintiff's Statement at ¶ 83).  Once there, Sanders

informed her that Verizon would terminate her because of excessive absences.

(Plaintiff's Statement at ¶ 84, Defendants' Statement at ¶ 65).  The company had

concluded that her absences placed her on step four of the RAP, mandating

termination.  (Defendants' Statement at ¶ 65).  Plaintiff had been placed on a step-

three status due to her absence from September 17 to 19, 2002 and a step-four

status because of her absences on September 30, October 8-11, 2002 and October

18-December 31, 2002.  (See Defendants' Exhibits, Ex. T).  Plaintiff was not issued

step letters for these absences when they occurred, but defendants did prepare a letter on January 20, 2003 indicating that these absences had placed her on step four status, leading to her termination. (Defendants' Statement at ¶ 65). This was one of three or four versions of the letter prepared before the January 20, 2003 meeting. (Plaintiff's Statement at ¶ 95, Defendants' Response at ¶ 95). Defendants failed to provide plaintiff with the final step-four letter; they claim that plaintiff left Sanders's office before he could give her the document. (Plaintiff's Statement at ¶ 50, Defendants' Response at ¶ 50). He also failed to mail her the letter. (Id. at ¶ 50). Plaintiff contends that she should have been on the five-step RAP, and therefore her termination was not justified. (See Plaintiff's Response at ¶ 15). At this meeting, Sanders may have replied to plaintiff's questions about the Department of Labor findings by declaring that "I don't care." (Plaintiff's Statement at ¶ 22). At the time of her termination, defendants also did not discuss with plaintiff taking short-term disability benefits, returning to work, or taking long-term disability. (Id. at ¶ 158). Verizon did, however, provide benefits to the plaintiff under the company disability program that lasted until January 19, 2003. (Id. at ¶ 70). CORE, Verizon's benefits administrator at the time, informed plaintiff by letter on January 29, 2003 that she had been approved for FMLA leave for her absence from May 2-July 23, 2002. (Defendants' Statement at ¶¶ 67-68).

Plaintiff also contends that defendant Sanders applied the RAP inconsistently. At his deposition, the union steward testified that word in the office was that Sanders

had favored some workers over others when determining whether their absences should be excused.  (Plaintiff's Statement at ¶¶ 132-135).  The steward named several workers unhappy with the way that Sanders applied the RAP program.  (Id.).  Defendants deny that the program was applied unfairly and note that plaintiff offers only unsubstantiated rumors and gossip to support these claims.  (Defendants' Response at ¶¶ 132-135, 138).

Plaintiff filed a complaint (Doc. 1) on January 10, 2005, raising allegations against Verizon Communications, Inc. and Verizon Pennsylvania under the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, *et seq.,* the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Cons Stat. Ann. §§ 955, *et seq*.  She amended the complaint on September 3, 2005 (Doc. 32).  This amended complaint added defendants Verizon Benefits Center, James Sanders, and CORE, Inc.  That complaint specified that her claims under the FMLA were aimed at all defendants, but those under the ADA and PHRA applied only to Verizon Communications, Verizon Pennsylvania and Verizon Benefits Center.  Plaintiff added a third count, alleging that all defendants had violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 12101, *et seq.*  On November 15, 2005, by stipulation the parties dismissed defendant CORE from the case and dismissed against the remaining defendants any allegations related to COBRA or non-pay.  (See Doc. Nos. 40 and 41).

The amended, modified complaint consisted of three counts.  The first court,

11

raised against all of the defendants, alleged interference with plaintiff's rights under the FLMA and retaliation under that act.  The second count alleged discrimination for failure to accommodate and retaliation under the ADA and PHRA against Verizon Communications, Verizon Pennsylvania and Verizon Benefits Center.  That claim also alleged that Verizon's attendance policies were discriminatory because they had a disparate impact on those with disabilities or illnesses that required them to be absent from work. Plaintiff also raised a claim under ERISA, alleging that the defendants failed to provide her with proper notice of her opportunities for disability leave and with documentation related to her employment and pension status she had requested.

After discovery, both sides submitted motions for summary judgment, submitting them to the magistrate judge.  On January 12, 2007, Magistrate Judge Mannion issued his report and recommendation in the case.  He recommended that we grant summary judgment ot the defendants on plaintiff's discrimination claims under the ADA and PHRA, as well as her ADA retaliation claim.  He also recommended that we grant summary judgment to the plaintiff on her interference claim under the FLMA for the period between May 2, 2002 and July 30, 2002.  He found, however, that we should deny the summary judgment motions of both sides and allow the matter of damages owed the plaintiff for this period to proceed to trial. Additionally, the Magistrate Judge recommended that we deny both sides' summary judgment motions on plaintiff's interference claim under the FLMA for the period of

July 7 through August 4, 2002.  He found the same action appropriate for plaintiff's

FMLA retaliation claim.  Both sides submitted objections and briefs supporting their

positions, and the matter is now ripe for disposition.

## II.  Jurisdiction

Because this case raises claims under the ADA, FMLA, and ERISA, this court

has jurisdiction we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts

shall have original jurisdiction of all civil actions arising under the Constitution, laws,

or treaties of the United States.").  We  have supplemental jurisdiction over the

plaintiff's claims under the PHRA pursuant to 28 U.S.C. § 1367.

## III.  Legal Standard

In disposing of objections to a magistrate judge's report and recommendation,

the district court must make a *de novo* determination of those portions of the report

to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v.

Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate judge.

The district court judge may also receive further evidence or recommit the matter to

the magistrate judge with instructions. Id.

When no objections to the report and recommendation have been filed, in

order to decide whether to adopt the report and recommendation, we must

determine whether a review of the record evidences plain error or manifest injustice.

See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P.

72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).

The case comes before this court on motions for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Knabe v. Boury</u>, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

## IV.  Discussion

Both sides have filed objections to the Magistrate Judge's report and recommendation.  We will address each in turn.

## A.  Plaintiff's Claims Under the ADA and the PHRA

The plaintiff objects to the Magistrate Judge's recommendation that we dismiss her claims under the Americans with Disabilities Act and Pennsylvania Human Relations Act that defendants discriminated against her because of her disability by refusing to offer her a reasonable accommodation that would have allowed her to perform her job.  The purpose of the Americans with Disabilities Act is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities...."  42 U.S.C.A. § 12101 (b)(1).

Under the ADA, an employer cannot discriminate against a qualified individual with a disability because of her disability in regard to her employment.  42 U.S.C.A. § 12112 (a). Further, an employer must make reasonable accommodations to known physical or mental limitations of an otherwise qualified employee with a disability

unless such employer can demonstrate the accommodation would impose an undue hardship on the operation of the employer's business.   Id.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (holding that "[d]iscrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.").  Our analysis under the ADA applies equally to plaintiff's claims under the PHRA.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

The plaintiff has the initial burden in an ADA matter of establishing a *prima facie* case.  Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3rd Cir. 1996); Newman v. GHS Osteopahtic, Inc., 60 F.3d 153, 157 (3rd Cir. 1995).  A *prima facie* case is established by the plaintiff when she demonstrates: 1)she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination.  Shiring v. Runyon, 90 F.3d 827, 831 (3rd Cir. 1996);   Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3rd Cir. 1998).

If the plaintiff meets this initial burden, the court then applies the next step in "the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805." Abramson v. William Patterson College, 260 F.3d 265, 281 (3d Cir. 2001).  The burden of production shifts to the employer to "proffer a legitimate,

non-discriminatory reason for the adverse employment decision." Id. at 282.  An

employer need only introduce "evidence which, taken as true, would permit the

conclusion that there was a nondiscriminatory reason for the unfavorable

employment decision." Fuentes v. Pierske, 32 F.3d 759, 763 (3d Cir. 1994).  "The

employer need not prove that the tendered reason *actually* motivated its behavior, as

throughout this burden-shifting paradigm the ultimate burden of proving intentional

discrimination always rests with the plaintiff." Id. (emphasis in original).  Once the

employer meets this burden, the plaintiff must show that a jury  "could reasonably

either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

an invidious discriminatory reason was more likely than not a motivating factor or

determinative cause of the employer's action." Id. at 764.

The Magistrate Judge found that plaintiff had not met her *prima facie* burden

of demonstrating that defendants discriminated against her by failing to provide a

reasonable accommodation for her disability.[1]  The Magistrate Judge articulated two

grounds for this failure.  Pointing out that the case law under the ADA establishes

two means of demonstrating discrimination–disparate treatment or disparate

impact–the Magistrate Judge concluded that plaintiff did not present sufficient

evidence to survive summary judgment on either ground.[2]  First, the Magistrate

---

[1]For the purpose of plaintiff's claim, the court assumed that she was disabled and
otherwise qualified to do the work she was assigned.

[2]A plaintiff asserting a "disparate treatment" claim must present evidence "that the
employer intended to discriminate against the protected group," either through direct
evidence or "circumstantial evidence from which an inference of intentional treatment may

17

Judge found the plaintiff had not presented evidence to support her disparate treatment claim because the defendants had offered to accommodate her disability, and the plaintiff does not dispute that Verizon made this offer.  Second, the Magistrate Judge concluded that plaintiff had not presented sufficient evidence to establish a disparate impact case because she had provided no statistical or other systematic evidence to prove the defendants applied their attendance policy in a way that had a disproportionate impact on people with disabilities.[3]

While plaintiff does not address the distinction drawn by the magistrate judge between a disparate impact and a disparate treatment analysis, she does appear to attempt to address both grounds provided by the Magistrate Judge for granting summary judgment to the defendants.  In terms of the disparate treatment theory, plaintiff argues that defendants did not engage in the required "interactive process" in establishing an accommodation to her disability, which would establish she had

be drawn."  Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313 (3d Cir. 1994).  A plaintiff proceeding under this theory follows the McDonnell Douglas test discussed *supra*.  The "disparate impact" theory prohibits "employment practices, adopted without a discriminatory motive, [that] may in operation be functionally equivalent to intentional discrimination." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988).  To make out a *prima facie* case under this theory, a plaintiff must "first identify the specific employment practice that allegedly has a disproportionate impact," and then "establish causation by offering statistical evidence sufficient to show that the practice in question has resulted in prohibited discrimination."  Armstrong, 33 F.3d at 1314.

[3]The plaintiff does not address the Magistrate Judge's conclusion that she presented no evidence by which a reasonable juror could find that the defendants' policies created a disparate impact for people with disabilities.  We will therefore consider that portion of the report to be without objection.  As we find no clear error of law or manifest injustice in the Magistrate Judge's recommendation, we will adopt it.

experienced disparate treatment.  Courts have concluded that when an employee suffers from a disability and seeks an accommodation under the ADA "'both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Taylor, 184 F.3d at 312.  To show that an employer did not properly engage in this "interactive process," an employee must show that: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Conneen v. MBNA Am. Bank, N.A., 334 F.3d 313, 330-31 (3d Cir. 2003).

Neither party disputes in their statement of facts that defendants offered plaintiff a reasonable accommodation for her disability.  Offering an accommodation for plaintiff's disability certainly qualifies as a "good faith effort to assist the employee in seeking accommodations." Id. at 330.  Plaintiff's claim that defendants failed to engage in the required interactive process surrounding a disability accommodation must therefore fail.  While plaintiff insists that defendant terminated her in order to avoid supplying this accommodation and this offer was merely a ruse to avoid liability, plaintiff offers no evidence to support this claim.[4]  Based on this evidence, a

---

[4]Plaintiff points to the same evidence of allegedly disparate treatment of other workers with similar attendance problems as we discussed in Section A, *supra.*  For the reasons stated in that section, we do not find this evidence meets plaintiff's burden for

reasonable jury could not conclude that defendants discriminated against the plaintiff on the basis of her claimed disability, and we will adopt the report and recommendation on this point.[5]

Even if we were to find that plaintiff had made out a *prima facie* case of discrimination under the ADA, we would still conclude that defendants were entitled to summary judgment.  Under the standards articulated by the courts for ADA cases, once a plaintiff has made out a *prima facie* case of discrimination under the ADA, the burden shifts to the defendant to articulate "legitimate, non-discriminatory reasons" for the employment decision in question.  Here, we find that defendants did articulate these reasons.  Defendants have demonstrated that plaintiff lost her job because of repeated absences in violation of company policy, and that the decision was made without reference to any disability claimed by the plaintiff.  Plaintiff does not offer any evidence to demonstrate that claims of unexcused absences was merely pretext for

---

overcoming defendants stated non-discriminatory reasons for their employment action.

[5]We also reject plaintiff's contention that defendants somehow asserted that the accommodations offered plaintiff constituted an "undue burden" and would not have to be supplied.  This claim misstates the facts of the case.  Defendants have not argued that the accommodations offered the plaintiff were an undue burden, but that they terminated her because she failed to abide by the company's attendance policy.  In that sense, <u>Taylor v. Phoenixville Sch. Dist</u>, is inapposite to the case.  <u>See</u> <u>Taylor</u>, 184 F.3d 296 (3d Cir. 1999).  In <u>Taylor</u>, the defendant school district had been made aware of plaintiff's request for an accommodation to her bipolar disorder, but refused to engage in negotiations to balance the interests of the two sides.  Instead, plaintiff sued the defendant school district, which then claimed the proposed accommodation unreasonable.   The court found that this refusal to offer any accommodations was "not the proactive process intended."  <u>Id.</u> at 315.  Here, the defendants did not avoid the proposed interactive process, but instead offered an accommodation.  The defendants thus engaged in the required negotiating process, and a jury could not conclude that defendants' behavior failed to meet legal standards.

defendants' underlying motive of eliminating a person with a disability by which a reasonable juror could disbelieve defendants' stated reasons for their employment decision.  See Fuentes, 32 F.3d at 764.  Therefore, even if plaintiff could establish a *prima facie* case of discrimination on the basis of disability, we would adopt the report and recommendation and grant defendants' motion for summary judgment on plaintiff's ADA and PHRA claims.

## B.  Plaintiff's Retaliation Claims under the ADA and PHRA

Plaintiff objects to the Magistrate Judge's recommendation that we grant summary judgment to the defendants on her retaliation claims under the ADA and the PHRA. The law provides that to establish a *prima facie* case of retaliation the plaintiff must demonstrate that (1) he was engaged in protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the protected activity and the discharge.[6]  Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001).[7]

---

[6]We note that the United States recently addressed the second of these factors in the context of Title VII of the 1964 Civil Rights Act in Burlington Northern & Sante Fe Rwy. Co. v. Smith, 126 S. Ct. 2405 (2006).  If we take that case to apply to this ADA and FMLA case, we would be forced to decide whether plaintiff suffered a "materially adverse" employment action after she engaged in protected activity.  Id. at 2415.  Such an action is one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006).  Since the plaintiff lost her job and would qualify under even the more restrictive standard earlier applied, we will not alter the analysis based on Smith.

[7]Defendants contend that in order to make out a *prima facie* case of retaliation under the ADA and PHRA defendant would first have to demonstrate that she "in fact was

The Third Circuit has explained the remainder of the analysis as follows:

> If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. Woodson, 109 F.3d at 920 n. 2. The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." Id.
>
> If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. Id.; see

---

disabled." (Memorandum of Law in Opposition to Plaintiff's Objections to Magistrate Judge Malachy E. Mannion's Report and Recommendations (Doc. 113) at ft.2). We disagree.  In Williams v. Philadelphia Hous. Auth. Police Dept., the Third Circuit Court of Appeals held that "[u]nlike a claim for discrimination under the ADA, an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA.  'The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.''" Williams, 380 F.3d 751, 759 (3d Cir. 2003) (quoting Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003)); see also, Krouse v. American Sterilizer Co., 126 F.3d 494, 498 (3d Cir. 1997) (holding that "a person's status as a 'qualified individual with a disability' is not relevant in assessing the person's claim for retaliation under the ADA.").

also <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 519, 113

S.Ct. 2742, 2753-54, 125 L.Ed.2d 407 (1993) ("It is not

enough . . . to disbelieve the employer; the factfinder must

believe the plaintiff's explanation of intentional

discrimination.") (emphasis omitted); <u>Sheridan v. E.I.</u>

<u>DuPont de Nemours & Co.</u>, 100 F.3d 1061, 1067-68 (3d

Cir. 1996) (en banc) (explaining how plaintiff may satisfy

burden), <u>cert.</u> <u>denied</u>, 521 U.S. 1129, 117 S.Ct. 2532, 138

L.Ed.2d 1031 (1997). The plaintiff must prove that

retaliatory animus played a role in the employer's

decisionmaking process and that it had a determinative

effect on the outcome of that process. <u>Woodson</u>, 109 F.3d

at 931-35 (discussing proper standard to apply in Title VII

retaliation case). The burden of proof remains at all times

with the plaintiff. <u>Id.</u> at 920 n. 2.

<u>Krouse v. American Sterilizer Co.</u>,126 F.3d 494, 500-01 (3d Cir. 1997)

To obtain summary judgment, the employer must show that the trier of fact

could not conclude, as a matter of law, (1) that retaliatory animus played a role in the

employer's decisionmaking process and (2) that it had a determinative effect on the

outcome of that process.  These two factors may be met by establishing the

plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or

more elements of the plaintiff's *prima facie* case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation. Id. at 501.

The Magistrate Judge found that plaintiff had provided evidence that she engaged in a protected activity by requesting an accommodation and that she had suffered from an adverse employment action by being terminated, but could not provide evidence to demonstrate a causal connection between the protected activity and the firing. Since the defendants, as plaintiff acknowledged, had been willing an able to provide plaintiff with an accommodation, plaintiff could not present evidence that she was fired for requesting that accommodation. Plaintiff contends that she presented evidence that her termination was the result of this requested accommodation. Defendants fired her "within one week of requesting accommodations, and 3 days after defendants had agreed to accommodations." (Plaintiff's Brief in Support of Her Objections to Magistrate Judge Malachy E. Mannion's Report and Recommendations (Doc. 111) (hereinafter "Plaintiff's Brief") at 6-7). This close temporal proximity between the firing and plaintiff's protected activity, combined with disparate treatment of other workers with similar attendance problems, could lead a jury, plaintiff argues, to find that defendants retaliated against her for requesting accommodations.

A temporal proximity between a protected activity and an adverse employment decision can support a retaliation claim. See Williams, 380 F. 3d at 760 (holding that "in the ADA retaliation context . . . 'temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link.'") (quoting Shellenberger, 318

F.3d at 183).  Such a temporal coincidence, however, must betray a timing "unusually suggestive of retaliatory motive before a causal link will be inferred."  Shellenberger, 318 F.3d at 189 n.9.  (quoting Krouse, 126 F.3d at 503).  "The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation."  Id. at 189.

In Williams, the plaintiff, a police officer for the Philadelphia Housing Authority with more than two decades of experience, requested an assignment to the radio room after he began to experience psychological difficulties.  Williams, 380 F.3d at 760.  Two months after requesting this position, defendant terminated his employment.  Id.  Plaintiff claimed that the temporal proximity between his firing and his protected speech was evidence sufficient to show retaliation.  Id.  The court found the "temporal proximity [was] not so close as to be unduly suggestive,'" and required other evidence to establish the *prima facie* retaliation case.  Id. (quoting Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003).  The plaintiff offered no other evidence to show retaliatory action, and the defendant offered "compelling" evidence that they terminated plaintiff because he had not pursued the well-established option available for people in his condition, medical leave.  Id.  The court therefore concluded that a reasonable jury could not conclude that plaintiff's protected activity had caused defendant to terminate him.  Id. at 761.

In Shellenberger, plaintiff filed an Equal Employment Opportunity Commission complaint regarding workplace conditions that exacerbated her disability due to allergies.  After defendant had become aware of plaintiff's complaint, the plaintiff and her supervisors held a meeting where plaintiff sought accommodations that would make it possible for her to continue working.  One of her supervisors told her that he was aware she was "'taking

the legal route'" and suggested she continue proceeding in that fashion.  <u>Shellenberger</u>,

318 F.3d at 186.        Thirteen days later defendant terminated plaintiff.  <u>Id.</u>  At the meeting

were the company fired her, plaintiff asked her supervisors if she was being fired because

of her disability.  A supervisor, Resetar, responded that "'according to the banks' attorneys,

you do not have a disability.'" <u>Id.</u>  The court found that plaintiff had made out a *prima facie*

case of retaliation because "the timing of [the supervisor's] comment [about plaintiff's

EEOC complaint] combined with Resetar's comments during the [meeting where plaintiff

was fired], could very well lead a reasonable jury to conclude that Shellenberger was fired

because she took the 'legal route.'" <u>Id.</u> at 189.

      This case is more like <u>Williams</u> than <u>Shellenberger</u>.  Plaintiff offers no evidence

beyond temporal proximity that she lost her job as retaliation for seeking accommodations

for a disability.  Her supervisors, unlike those in <u>Shellenberger</u>, made no statements

contemporaneous to their adverse employment action that suggested a disregard for the

concerns raised by plaintiff's request for an accommodation.  Plaintiff's supervisors here

did not simply disregard plaintiff's complaints and suggest she pursue legal action or

question the existence of her disability.  Like in <u>Williams</u>, plaintiff has offered no other

evidence that a jury could use to determine defendants had terminated plaintiff because of

her request for an accommodation.  In any case, the facts here are fundamentally different

from any of the retaliation cases that address a temporal proximity between an adverse

employment activity and a request for an accommodation under the ADA: here, defendants

agreed to provide plaintiff the requested accommodation.  Plaintiff offers no evidence but

only speculation to suggest that offering this accommodation motivated defendants'

employment decision.  Because of this absence of evidence, we will adopt the Magistrate

Judge's recommendation that we grant summary judgment to the defendants on plaintiff's

retaliation claims under the ADA and the PHRA.

**C.  Summary Judgment for the Defendants on Plaintiff's ERISA claims**

> **i. ERISA claim for failure to produce requested short-term disability records**

The plaintiff objects to the Magistrate Judge's recommended that we grant summary

judgment to the defendants on plaintiff's claim that defendants had violated her rights

under ERISA by failing to disclose records she requested from CORE, a medical provider

used by the company.  In her amended complaint, plaintiff alleged that she did not receive

a reply to request for "all documents related to her benefits" made to CORE, and that this

action violated 29 U.S.C. § 1132.  The Magistrate Judge concluded that plaintiff had

requested these records from CORE by sending the company a fax requesting them.  The

defendants were not party to this request, and no evidence existed that defendants were

even aware of it.  Plaintiff contends that CORE, as plan administrator, was defendants'

agent, and "therefore what it knew Verizon legally knew."  Apparently, defendant contends

that agency principles assign CORE's knowledge to defendants.  In any case, five days

after plaintiff requested her records from CORE, all records held by CORE were transferred

to the defendants.  This transfer, plaintiff insists, means that defendants had knowledge

the request for information and a duty to turn it over.

Section 1132(c)(1)(B) of the Employee Retirement Security Act prescribes penalties

for "[a]ny administrator . . . (B) who fails or refuses to comply with a request for any

information which such administrator is required by his title to furnish to a participant or

beneficiary (unless such failure or refusal results from matters unreasonably beyond the

control of the administrator)."  29 U.S.C. § 1132(c)(1).  The provision requires that the

information be provided by the administrator within thirty days of the request.  Id.  The

Third Circuit Court of Appeals has held that this section does not "impose upon a plan

participant or beneficiary seeking information the inflexible requirement of addressing the

request to the current plan administrator."  Romero v. SmithKline Beecham, 309 F.3d 113,

119 (3d Cir. 2002).  To impose liability for failure to respond, however, the statute "requires

actual receipt by the administrator," since "[i]t is not customary to refer to a person's failure

or refusal to comply with a request that has never been received."  Id. at 119-20.  The court

also concluded that "it is unlikely that Congress wanted to impose a civil penalty on a

person who has not engaged in any wrongful conduct."  Id. at 120.  Finally, the court found

that the thirty-day time-limit to respond to a beneficiary's request did "not begin to run until

the request is actually received either by the administrator or under the administrator's

supervision."  Id.

In this case, plaintiff contends that she requested information on her retirement plan

on March 26, 2003 from CORE, a party contracted to administer benefits for Verizon.[8]  She

concedes that she never requested the same information from Verizon, but argues that this

request was obtained by Verizon when the company terminated CORE's role as

administrator in [2002] and CORE forwarded all related documents to Verizon.  As a result,

plaintiff argues, Verizon had knowledge of the request.  Plaintiff also cites to general

agency principles to argue that defendants should be found to have knowledge of her

---

[8]In her amended complaint, plaintiff stated that "Verizon's benefits administrator under the plans for FMLA and Sickness and Accident Disability Pay Benefits (SADPB) at the relevant time was Defendant CORE, Inc. (CORE)."  (Amended Complaint (Doc. 24) at ¶ 9).  Plaintiff originally included CORE in her complaint, but voluntarily dismissed the company as a defendant.

request for plan information, arguing that "because CORE was Plan administrator Verizon's

agent therefore what it knew Verizon legally knew." (Plaintiff's Brief (Doc. 111) at 9) (citing

Biggans v. Hajoca Corp., 94 F.Supp. 593, 599 (E.D. Pa. 1950).

Plaintiff does not cite to any ERISA-related cases, however, which indicate that

courts should impute the knowledge of a benefits administrator to the employer.   Indeed,

the language of the provision in question places responsibility on the benefits

administrator–not the company employing that administrator–to provide the requested

information.  See 29 U.S.C. 1132(C)(1)(B).  The administrator in this case was CORE, not

Verizon, and responsibility for the failure to provide the information should be charged to

CORE, especially since plaintiff never requested the information from defendants.

Likewise, plaintiff offers no evidence that defendants had knowledge of the request after

CORE turned over its files to the defendant in 2003.  We therefore cannot find that the

administrator had knowledge of a request for documentation and hold defendants

accountable for a failure to turn over information.  To conclude otherwise would be to hold

Verizon responsible for "failure or refusal to comply with a request that has never been

received."  Romero, 309 F.3d at 320.

Even if we were to find that defendants were responsible for withholding the

information requested by the plaintiff, we would still have discretion to decline to award

damages for that failure, since "if an administrator does not comply with a request within

the specified time, the District court must make a discretionary decision as to whether a

civil penalty should be assessed and as to the amount of any such penalty."  Id.  The court

has established factors we must consider in determining whether to assign any penalty for

defendants' actions.  They "include 'bad faith or intentional conduct on the part of the

administrator, the length of delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.'" Id. (quoting Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 90 (2d Cir. 2001).  We find that the these factors weigh heavily in favor of the defendants and would decline to award any damages to plaintiff in any case.  While plaintiff contends that there was a long delay in turning over information to the plaintiff, and that some of that information has yet to be received, we find no evidence that any prejudice to the plaintiff occurred from this failure.  Furthermore, there is no evidence that plaintiff ever made a request to the defendants for the information, and we cannot therefore find bad faith in defendants' actions, much less an intentional refusal to turn over the documents.[9]  Accordingly, we will adopt the magistrate judge's recommendation that we grant summary judgment for the defendants on plaintiff's claim for failure to turn over documents as required by ERISA.

### ii. ERISA claim for failure to advise of long-term disability options

Neither side objected to the Magistrate Judge's recommendation that we grant defendants summary judgment on plaintiff's claim that defendants did not advise her of her options for long-term disability as required by ERISA.  We find no clear error or manifest injustice in that finding, and will adopt the report and recommendation on that point.

## D.  Plaintiff's FMLA claims

### i.  Interference with FMLA Rights for the period of May 2 to June 30, 2002

The Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.*, attempts to "balance the demands of the workplace with the needs of families" by allowing workers "to

---

[9]We note, as well, that defendants did turn over information as part of the discovery in the lawsuit, the first time a formal request had been made for that information.

take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition" and simultaneously "accommodat[ing] the legitimate interests of employers."  29 U.S.C. § 2601(b)(1-3).  Under the act , "[e]ligible employees 'shall be entitled to a total of twelve workweeks of leave during any twelve-month period' if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  Collison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).  An employee who takes a "qualified absence" has a right to reinstatement "to the former position or an alternate one with equivalent pay, benefits and working conditions."  Id. (citing 29 U.S.C. § 2614(a)(1)).  An eligible employee is entitled to twelve weeks of FMLA leave per year "for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."  Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997); Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002).

The Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  An employee who alleges that an employer "interfered" with his rights under the FMLA "needs only to show that he was entitled to benefits under the FMLA and he was denied them."  Callison, 430 F.3d at 119.  An employee is not charged with proving discrimination under the act, and an employer cannot refute those charges by claiming a "legitimate business purpose" for its decisions: "an interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  Id. at 119-20.  Therefore, no burden shifting

analysis is required for a plaintiff to prevail.  <u>Sommer v. Vanguard Group</u>, 461 F.3d 397,

399 (3d Cir. 2006).  Interference can occur "'not only [by] refusing to authorize FMLA leave,

but [by] discouraging an employee from using such leave.'" <u>Id.</u> (quoting 29 C.F.R. §

825.220(b)).  An employer who violates this interference provision "may be found liable for

civil damages that include: compensatory damages for any wages, salary, employment

benefits or other compensation lost by reason of the violation; and liquidated damages."

<u>Id.</u> (citing 29 U.S.C. § 2617(a)(1)(A)).  Still, that provision  "provides no relief unless the

employee has been prejudiced by the violation: The employer is liable only for

compensation and benefits lost 'by reason of the violation,' [citation omitted], for other

monetary losses sustained 'as a direct result of the violation,' [citation omitted], and for

'appropriate equitable relief, including employment, reinstatement, and promotion. [citation

omitted].  The remedy is tailored to the harm suffered."  <u>Ragsdale</u>, 535 U.S. at 89.

 The Magistrate Judge found that the plaintiff was eligible for leave from May 2 to

July 30, 2002, and that the defendants interfered with her right to take this leave.  No

evidence, the Magistrate Judge found, existed to show that the defendants had not

interfered with plaintiff's right to take this leave.  He recommended granting summary

judgment to the plaintiff on her claim of interference with her FMLA rights during that

period.  According to this recommendation, trial need go forward only on the issue of

damages.  Defendants argue that, due to a "conciliation" between the parties through the

Department of Labor, plaintiff had retroactively obtained FMLA coverage for the period in

question.  As a result, plaintiff has already received the coverage required her for this

period, and she is not therefore entitled to judgment.  Doing otherwise would render the

conciliation meaningless and would discourage other employers from participating in the

conciliation process.  In any case, defendants argue, plaintiff did not suffer any prejudice from her employer's initial response to the absence, and has not alleged any.  She cannot then claim a violation of the law.[10]

We will adopt the magistrate judge's recommendation that plaintiff's motion for summary judgment on this claim should be granted.  The facts of the case make clear that plaintiff had a right to FMLA benefits for her illness that began on May 2, and that defendants did not provide these benefits.  The plaintiff has thus shown that she was "entitled to FMLA benefits and [s]he was denied them."  Callison, 430 F.3d at 119. Defendants argument that adopting this recommendation will somehow discourage

_____

[10]The Magistrate Judge found that neither party disputed that plaintiff was eligible for FMLA leave during this period.  (Report and Recommendation (Doc. 108) at 35).  In a brief footnote to their objections to the report and recommendation, defendants now deny that plaintiff was entitled to this leave.  (See Objections of Defendants to the Report and Recommendation of Magistrate Judge Malachy E. Mannion (Doc. 109) (hereinafter "Defendants' Objections) at 4, n.1).  They did not make this argument about plaintiff's 2002 claims for FMLA leave in their brief for summary judgment submitted to the magistrate judge.  (See Memorandum of Law in Support of Motion for Summary Judgment (Doc. 92) at 2-4).  Defendants offer no argument in their brief footnote as to why plaintiff was not eligible for FMLA leave during this period, claiming only that an "issue of fact" exists about plaintiff's entitlement to leave.  (See Defendant's Objections at 4, n.1).  We fail to see why defendants should be able to use their objections to make an argument they apparently did not make to the magistrate judge.  To allow the defendants to do so here would undermine the important advisory role played by the magistrate judge.  We cannot rule on an issue in a report and recommendation when a party's own actions in litigation failed to give the magistrate judge an opportunity to issue a considered recommendation on the issue.  See Kirk v. Meyer, 279 F.Supp.2d 617 (E.D. Pa. 2003) (refusing to consider a number of claims in a habeas corpus petition because they were not raised before the magistrate judge, and noting that "[t]his is so because 'the purpose of the Magistrates Act would be frustrated if . . . a district court [was required] to consider a claim presented for the first time after the party has fully litigated his claims before the magistrate judge and found they were unsuccessful.'") (quoting Bolar v. Blodgett, 29 F.3d 630, 1994 WL 374194 at ** 1 (9th Cir. 1994) (unreported).  In any case, the argument offered here by the defendants provides us with no grounds to conclude that the magistrate judge erred in concluding that plaintiff was eligible for leave during the spring and summer of 2002.

employers from engaging in "conciliation" through the Department of Labor is unfounded.

We note that the case came before the Department of Labor because plaintiff filed a

complaint when defendants refused to provide her with benefits to which she felt entitled

under the FMLA.  Ultimately, the Department of Labor decided that plaintiff had a right to

these benefits for a portion of the period that she sought them.   Defendants thus did not

exactly agree to settle a dispute through mediation, but were forced to work with plaintiff in

order to settle a claim that they had originally denied.  We therefore fail to see how the

administrative process would have any meaning if we did not adopt the Department's

finding that plaintiff was entitled to benefits for the period.  We also find that defendants

interfered with the plaintiff's FMLA rights, since they prevented her from exercising them

until forced by her complaint.

While we recognize that a plaintiff must show prejudice by the denial of benefits in

order to prevail on an interference claim, we do not think the evidence clear that plaintiff

could not prevail here, despite the admitted fact that plaintiff eventually provided the

benefits required under the act.  We will therefore adopt the magistrate judge's

recommendation that this claim proceed to trial on the issue of damages.  Defendants

denied plaintiff a benefit to which she was due, and one which she did not obtain until

months after it was owed her.  Since a plaintiff can show prejudice by demonstrating losses

other than the loss of benefits directly denied by the violation and in terms of expenditures

that resulted from the violation, we find a genuine issue of fact as to plaintiff's damages on

this issue, if any.  See Ragsdale, 535 U.S. at 89.  We will therefore adopt the

recommendation that the case proceed to trial on the issues of damages for the claim from

May 2, 2002 to June 30, 2002.

**ii. Interference with FMLA Rights for the Period of July 24 to August 4, 2002**

The Magistrate Judge recommended that the summary judgment motions of both

the plaintiff and defendants be denied for the claims grounded in this period.  The

Magistrate Judge noted that plaintiff's twelve weeks of FMLA leave had been exhausted

before plaintiff sought this leave, but pointed out that the parties did not become aware of

that fact until January 2003.  Defendants then used that information to withdraw approval

of leave earlier granted the plaintiff.  That retroactive withdrawl, accepted by both sides in

negotiations with the Department of Labor, led to more disciplinary action for the plaintiff on

the basis of her attendance.  Since the FMLA was designed to allow workers to balance

their medical concerns with an employer's workplace needs, plaintiff's lack of knowledge

about the status of her FMLA leave undermined the ability of the plaintiff to plain her time

away from work as the statute allows.  The Magistrate Judge found that significant

questions of fact remain about whether plaintiff would have scheduled her leave differently

if she had knowledge of her status under the FMLA.  He therefore recommended that both

motions for summary judgment be denied on this issue.

Defendants argue that the report errs by finding that any evidence indicates that

they interfered with plaintiff's FMLA rights.  They note that the Department of Labor had in

its decision determined that plaintiff was due FMLA benefits for the period from May 2 to

July 24, 2002, and that plaintiff's absences after that date would no longer be eligible for

FMLA protection because she had used the twelve weeks to which she was entitled during

the preceding year.  The defendants point out that the magistrate judge's recommendation

would provide plaintiff with more than twelve weeks per year of leave, an entitlement not

allowed by the act and one that would disturb the balance between employer and

35

employee interests carefully set out by that legislation.

We agree with the defendants on this issue.  Plaintiff claims defendants interfered with her rights under the Act in denying her rights.  In order to prevail on an interference claim, however, plaintiff must demonstrate that she was entitled to rights and that defendants prevented her from exercising them.  This case is like Ragsdale.  There, the defendants had failed to inform the plaintiff, who suffered from cancer, that the 30-week leave she took to fight her illness would count as FMLA leave.  Ragsdale, 531 U.S. at 84.  A regulation established by the Department of Labor would have granted plaintiff another twelve weeks of leave for the employer's failure to inform the worker of her rights under the act.  Id.  The Supreme Court agreed with the lower courts that this regulation violated the statute and invalidated it.  Id. at 94.  The court concluded that the regulation, by adding twelve weeks to any worker's FMLA entitlement if an employer failed to inform the work of rights under the statute, undermined the statute's intention that each case be examined individually.  Id. at 93-4.  The court also found that "[t]o the extent the Secretary's penalty will have no substantial relation to the harm suffered by the employee in the run of cases, it also amends the FMLA's most fundamental guarantee–the employee's entitlement to 'a total of 12 workweeks of leave during any 12-month period.'" Id. at 94 (quoting 29 U.S.C. § 2612(a)(1)).  This penalty was not authorized by the law, the Court found, because the employee was entitled to only twelve weeks of leave, not "12 more weeks after the 30 weeks [her employer had given her] had passed."  Id.

Here, plaintiff received the twelve weeks of leave to which she was entitled after the Labor Department concluded she should receive FMLA leave until July 23, 2002.  After that date, she had no more FMLA leave available to her, and she therefore was not eligible

for any leave.  While we are sympathetic with plaintiff's claim that she may have planned

her absences differently had she known she had no more leave, we cannot conclude that

the leave she took was protected by the law and that defendants violated her rights.

Defendants provided–after an administrative procedure–the twelve weeks of FMLA leave

to which plaintiff was entitled.  This court cannot find that plaintiff was entitled to more

leave than the law mandates.  Because an interference claim requires that a plaintiff be

"eligible" for leave which she was denied, we find that plaintiff cannot prevail on her

interference claim for the leave after July 24, 2002.

## E.  Retaliation under the FMLA

The defendants object to the magistrate judge's recommendation that the parties'

summary judgment motions on plaintiff's retaliation claim under the FMLA be denied and

the case proceed to trial on the issue.  The Magistrate Judge concluded that the plaintiff

had made out a *prima facie* case for FMLA retaliation, and that she had presented

evidence by which a reasonable juror could conclude that defendants' stated non-

discriminatory reasons for firing plaintiff were merely pretextual.  Read in a light most

favorable to the plaintiff, the non-moving party, the defendants violated their own

procedures for providing disciplinary letters to absentees, by issuing various and

contradictory versions of disciplinary letters regarding the plaintiff, appearing to enforce the

discipline associated with the letter inequitably, and delays in providing disciplinary letters

until shortly before defendants terminated plaintiff.  All of those factors, combined with

alterations to attendance sheets, the Magistrate Judge found, constituted evidence

requiring a decision by a jury.

The same standard for a retaliation claim applies to the FMLA as for the ADA.  To

37

succeed on such a claim, plaintiff must show that "(1) [s]he took an FMLA leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." <u>Conoshenti v. Public Serv. Electric & Gas Co.</u>, 364 F.3d 135, 146 (3d Cir. 2004).  The magistrate judge concluded that the plaintiff had made out this *prima facie* case for retaliation.  Defendants apparently do not dispute this finding, since they offer no argument that plaintiff had not engaged in a protected activity, had not been the subject of an adverse employment action, and that there was no causal connection between the protected activity and adverse action.  <u>See</u> <u>Abramson</u>, 260 F.3d at 286.  Instead, defendants focus on whether plaintiff adequately rebutted defendants proffered non-retaliatory reasons for firing her.  Plaintiff likewise focuses her brief on the adequacy of defendants' claims of legitimate motive for the non-discriminatory action.  Much of the dispute in the briefs centers on the relative weight to give the evidence.  The parties dispute, for instance, the factual circumstances and relative weight of evidence that defendants rehired Jennfier Irizarry after realizing they had made a clerical error that led to her termination, but did not accord the same consideration to plaintiff.   Defendants contend the evidence demonstrates that her situation was not comparable to plaintiff's, while plaintiff argues that the only material difference in the two circumstances was that Irizarry had not engaged in protected activity, yet plaintiff had.  Additionally, plaintiff points out–and defendants do not deny–that there was a close temporal proximity between plaintiff's protected activity and her firing, and that a jury could conclude that this event demonstrates that defendants' stated reasons were mere pretext.

We will adopt the Magistrate Judge's recommendation on this point.  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).   Thus, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.  Here, the parties vigorously dispute the significance of rehiring Irizarry and the meaning of various drafts of disciplinary letters.  We find those disputes to be about facts material to the determination of whether defendants terminated plaintiff for seeking her rights under the FMLA.  Since there are genuine disputes about material facts, summary judgment is inappropriate on the question of retaliation under the FMLA.  We will accordingly adopt the report and recommendation on this point.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMMY L. MITROW,** | : | **No. 3:05cv64** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | **(Magistrate Judge Mannion)** |
| | : | |
| **VERIZON COMMUNICATIONS, Inc.,** | : | |
| **VERIZON PENNSYLVANIA, Inc.,** | : | |
| **VERIZON BENEFITS CENTER, d/b/a** | : | |
| **VERIZON, and** | : | |
| **JAMES SANDERS,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**<u>ORDER</u>**

_____**AND NOW**, to wit, this 19th day of April 2007, the report and recommendation of

Magistrate Judge J. Malachy E. Mannion is adopted in part and rejected in part, as follows:

1) The defendants' motion for summary judgment on plaintiff's claims for

discrimination under the Pennsylvania Human Relations Act and the Americans with

Disabilities Act is hereby **GRANTED**;

2) The defendants' motion for summary judgment on plaintiff's claims for retaliation

under the PHRA and the ADA is hereby **GRANTED**;

3) The defendants' motion for summary judgment on plaintiff's claims under the

Employee Retirement Security Act is hereby **GRANTED**;

4) The defendants' motion for summary judgment on plaintiff's claim of interference

with her rights under the Family and Medical Leave Act for the period of July 24 to August

4, 2002 is hereby **GRANTED;**

     5) The plaintiff's motion for summary judgment on her claim of interference with her rights under the FMLA for the period of May 2 to June 30, 2002 are hereby **GRANTED**. Trial will proceed only on the issue of damages for this violation; and

     6) Both parties' motions for summary judgment on the issue of retaliation under the FMLA are hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**